Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>ROBERTO L. CAPELLA CASELLAS<br><br>Apelante | KLAN202300406 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Sobre: Art. 246 Código Penal 2012<br><br>Caso Núm.: AICR202200237 AICR202200323 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de febrero de 2024.

Comparece ante nos el Sr. Roberto L. Capella Casellas (en adelante, "Capella Casellas o apelante"), para que revoquemos la *Sentencia* dictada el 7 de marzo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, "TPI"),  en donde se encontró culpable en dos (2) cargos por el delito de resistencia u obstrucción a la autoridad pública.[1] En consecuencia, fue sentenciado al pago de $500.00 de multa por los dos cargos, más el pago de la pena especial de $100.00 en cada cargo, para un total de $700.00.

Perfeccionado el recurso de apelación, procedemos a **confirmar** la *Sentencia* apelada. **Veamos.**

**-I-**

Los hechos delictivos del presente caso ocurrieron el **4 de julio de 2022** en el municipio de Aguadilla. Por estos hechos, el

---

[1] Art. 246 — **Resistencia u obstrucción a la autoridad pública**, del Código Penal de Puerto Rico, Ley Núm. 146-2012. 33 LPRA sec. 5336.

Ministerio Público presentó dos (2) denuncias contra el apelante, una por el delito de resistencia u obstrucción a la autoridad pública, en violación al Artículo 246 inciso (a) del Código Penal de Puerto Rico de 2012.[2] Específicamente, la denuncia esbozaba:

> *EL REFERIDO ACUSADO ROBERTO L. CAPELLA CASELLAS, ALLÁ EN O PARA EL DÍA 04 DE JULIO DE 2022 Y EN AGUADILLA; PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE AGUADILLA, ILEGAL, VOLUNTARIA Y CRIMINALMENTE, RESISTIÓ Y/O OBSTRUYÓ EL EJERCICIO DE LA AUTORIDAD PÚBLICA CONTRA UN FUNCIONARIO DE LA POLICÍA DE PUERTO RICO EN EL CUMPLIMIENTO Y/O TRATANDO DE CUMPLIR ALGUNA DE LAS OBLIGACIONES DE SU CARGO. CONSISTENTE EN QUE CUANDO EL AGENTE XAVIER MUÑOZ FIGUEROA, PLACA 35652 PROCEDÍA EN UNA INTERVENCIÓN DE TRÁNSITO POR VELOCIAD AL VEHÍCULO TOYOTA HYLANDER, TABLILLA IZF-391, AÑO 2018, COLOR BRONCE POR EXCESO DE VELOCIDAD EL CONDUCTOR EL SR. CAPELLA, LUEGO DE VARIOS INTENTOS CORRIDOS INDICA QUE NO ENTREGARA SU LICENCIA Y REGISTRO, SE ENCONTRABA EN UNA ACTITUD RETANTE Y NEGÁNDOSE EN TODO MOMENTO.*
>
> *HECHOS CONTRARIOS A LA LEY.[3]*

La segunda denuncia consistió en el delito grave de empleo de violencia o intimidación contra la autoridad pública, en violación al Artículo 245 del Código Penal de Puerto Rico de 2012.[4]

Por lo que, celebrada la vista inicial, como la vista preliminar, el TPI determinó causa probable.

Así, el juicio en su fondo por tribunal de derecho se celebró los días **27 de febrero de 2023** y **7 de marzo de 2023**.[5] Surge de la Transcripción de la Prueba Oral (en adelante, "TPO") que, los testimonios presentados por el Ministerio Público, en síntesis, fueron:

- El **Agte. Xavier Muñoz Figueroa** (en adelante, "Agte. Muñoz") – Agente estatal de la Policía de Puerto Rico (Policía), específicamente de la División de Patrullas de Carreteras de Aguadilla.[6]
  *En lo pertinente, testificó sobre la intervención con el Sr. Capella Casellas el día 4 de julio de 2022, a eso de las 6:10p.m. en la Carr. 2, km, 119.5. Adujo que se percató que un vehículo*

---

[2] 33 LPRA sec. 5336(a).
[3] Anejo 2 de la *Apelación*, págs. 3 – 4.
[4] Artículo 245. — **Empleo de violencia o intimidación contra la autoridad pública**. 33 LPRA sec. 5335.
[5] *Véase, Transcripción de Prueba Oral* (TPO).
[6] TPO, día 27 de febrero de 2023, pág. 7, líneas 17 – 18.

*marca Toyota modelo Highlander color bronce conducía a 58mph en zona rotulada de 45mph.[7]*

*Declaró, además, que encendió los biombos y sirenas de la patrulla y dirigió el vehículo hasta el área del paseo, donde el apelante se detuvo.[8] Según el Agte. Muñoz, se dirigió debidamente uniformado hacia el Sr. Capella Casellas, y le indicó las razones de su intervención. Arguyó que procedió a solicitarle licencia de conducir y registro del vehículo. En respuesta, el Sr. Capella Casellas alegó que no iba a esa velocidad.[9] Una vez le dio al Sr. Capella Casellas la oportunidad de ver la velocidad ponchada y notificarle que estaría disponible el recurso de revisión, el Agte. Muñoz le volvió a solicitar que entregara los documentos, pero el apelante no lo hizo, por lo que le orientó que estaba obstruyendo su labor al negarse a su solicitud.[10]*

*Según el testimonio del Agte. Muñoz, este se comunicó con su supervisor, el Sgto. Losangel Acevedo (en adelante, "Agte. Acevedo"), quien llegó al lugar debidamente uniformado, se identificó con el apelante y solicitó al Sr. Capella Casellas que proveyera los documentos requeridos para emitir la multa, pero el apelante reiteró su negativa.[11] Indicaron al Sr. Capella Casellas que sería puesto bajo arresto, por lo que comenzó a patearlos y a resistirse.[12] Ante tal resistencia, el Agte. Muñoz hizo uso del dispositivo de control electrónico (DCE). Desde el área de pasajero empujó al apelante para sacarlo del vehículo y ponerlo bajo arresto.[13]*

*Añadió que el acusado no cooperó con el arresto y continuó tensándose hasta que ambos oficiales lo montaron en la patrulla y lo transportaron hasta la División de Tránsito de Aguadilla.[14] De acuerdo con el testimonio, el acusado se negó a dar dato alguno, pero su esposa le brindó la licencia de conducir del Sr. Capella Casellas y luego de más de veinte (20) minutos pudo emitir el boleto.[15]*

*En el contrainterrogatorio, el Agte. Muñoz declaró que no recordaba si la patrulla estaba rotulada, pero que esta tenía biombos en su interior y que cualquier persona podría identificarla como un vehículo oficial.[16] Además, admitió que el apelante le mostró el registro del vehículo a través del cristal; sin embargo, no le mostró la licencia de conducir.[17] Testificó que el Sr. Capella Casellas le indicó que no se sentía seguro y que no le preguntó sus razones.[18] Tampoco le preguntó las razones por las cuales no le entregaba la licencia.[19] Así mismo, admitió que estuvo dialogando con el acusado por menos de diez (10) minutos.[20]*

*A preguntas del TPI, el Agte. Muñoz declaró que, cuando se bajó de la patrulla no llevaba en su mano arma de reglamento, el DCE ni el batón retractable.[21]*

---

[7] TPO, pág. 10, líneas 16 – 19 y pág. 11, líneas 1 – 8.
[8] TPO, pág. 12, líneas 1 – 3.
[9] TPO, pág. 12, líneas 6 – 9, línea 15, líneas 21 – 25 y pág. 13, línea 1.
[10] TPO, pág. 13, líneas 2 – 15 y pág. 14, líneas 11 – 12.
[11] TPO, pág. 15, líneas 1 – 4; pág. 16, líneas 19 – 25 y pág. 17, líneas 1 – 9.
[12] TPO, pág. 17, líneas 15 – 25 y pág. 18, líneas 1 – 5.
[13] TPO, pág. 18, líneas 10 – 18 y pág. 19, líneas 9 – 15.
[14] TPO, pág. 19, líneas 23 – 25 y pág. 20, líneas 3 – 16.
[15] TPO, pág. 20, líneas 24 – 25 y pág. 21, líneas 1 – 17.
[16] TPO, pág. 26, líneas 6 – 15 y pág. 27, líneas 3 – 7.
[17] TPO, día 27 de febrero de 2023, pág. 34, líneas 15 – 20 y pág. 36, líneas 6 – 13; TPO, día 7 de marzo de 2023, pág. 14, líneas 5-9.
[18] TPO, día 27 de febrero de 2023, pág. 36, línea 25; pág. 37, líneas 1 – 4 y pág. 38, líneas 1 – 4.
[19] TPO, pág. 41, líneas 23 – 25 y pág. 42, líneas 1 – 7.
[20] TPO, pág. 47, líneas 12 – 20.
[21] TPO, día 7 de marzo de 2023, pág. 38, líneas 17 – 25 y pág. 39, líneas 1 – 7.

- El **Sgto. Losangel Acevedo** (en adelante, "Agte. Acevedo") **–** Sargento de la Policía, específicamente de la División de Patrullas de Carreteras de Aguadilla.

  *Testificó que el Agte. Muñoz le solicitó su presencia en la intervención.[22]*

  *Según su testimonio, éste llegó al lugar en una patrulla rotulada, se identificó y le advirtió al Sr. Capella Casellas que negarse a entregar los documentos constituía delito.[23] Testificó, además, que la esposa del apelante tenía el registro del vehículo en su mano e intentaba persuadir al Sr. Capella Casellas de entregar los documentos, pero éste se negaba.[24]*

  *Añadió que él le solicitó al apelante entregar los documentos en más de tres (3) ocasiones. Ante la negativa, indicó al apelante que lo pondría bajo arresto. Sin embargo, se le dificultó llevar a cabo el arresto porque el Sr. Capella Casellas comenzó a lanzarles patadas, razón por la cual el Agte. Muñoz hizo uso del DCE.[25]*

  *Declaró, además, que lograron sacar al acusado del vehículo cuando el Agte. Muñoz se fue por el asiento del pasajero y lo empujó hacia afuera. Acto seguido, el Agte. Muñoz esposó al Sr. Capella Casellas, quien continuó con su actitud poco cooperadora.[26]*

  *En el contrainterrogatorio, el Sgto. Acevedo adujo que el Agte. Muñoz no le informó que el acusado le había mostrado el registro del vehículo.[27] También, reiteró sus declaraciones del directo y afirmó que desconocía las razones por las cuales el apelante se negó a entregar lo solicitado.[28] Admitió que el Sr. Capella Casellas le indicó que le soltara la mano y él salía.[29]*

  *Añadió que habló con el Sr. Capella Casellas a través de un espacio de menos de una pulgada que había abierto en la ventana del conductor. Como parte de su testimonio, el Sgto. Acevedo leyó del Artículo 10.22 de la Ley de Vehículos y Tránsito de Puerto Rico,[30] que no podrá voluntariamente desobedecer o negarse a cumplir una indicación u orden legal que se imparta en la forma dispuesta en este artículo por un agente del orden público con autoridad legal para dirigir, controlar o regular el tránsito.[31]*

  *Durante el recontrainterrogatorio el Sgto. Acevedo admitió que la intervención duró unos diez (10) minutos.[32]*

- El **Tte. Héctor Méndez Rivera** (en adelante, "Tte. Méndez") **–** Teniente de la Policía y Director del Polígono de Arecibo. Al momento de los hechos laboraba en el Distrito de Aguada.[33]

  *En lo pertinente, testificó sobre la investigación realizada el día 4 de julio de 2022.[34]*

  *Brindó testimonio sobre los videos que le proveyó la esposa del Sr. Capella Casellas, la **Sra. Carmen Negrón González** (en adelante, "Negrón González"), específicamente sobre el uso de fuerza. Señaló que el uso de fuerza fue justificado porque el apelante no proveyó la documentación requerida, estaba*

---

[22] TPO, pág. 42, líneas 16 – 21 y pág. 43, líneas 9 – 16.
[23] TPO, pág. 44, líneas 6 – 25 y pág. 45, líneas 17 – 23.
[24] TPO, pág. 45, líneas 22 – 25 y pág. 46, líneas 1 – 3.
[25] TPO, pág. 46, líneas 12 – 19; pág. 47, líneas 1 – 11 y pág. 48, líneas 1 – 11, 14-19.
[26] TPO, pág. 49, líneas 11 – 24.
[27] TPO, pág. 60, líneas 1 – 6.
[28] TPO, pág. 65, líneas 7 – 10, 22 – 25 y pág. 66, líneas 1 – 6.
[29] TPO, pág. 76, líneas 8 – 10.
[30] Artículo 10.22 de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22-2000 (9 LPRA sec. 5302).
[31] TPO, pág. 58, líneas 21 – 25; pág. 59, líneas 1 – 6 y pág. 61, líneas 1 – 6.
[32] TPO, pág. 82, líneas 7 – 11.
[33] TPO, pág. 87, líneas 15 – 18.
[34] TPO, pág. 89, líneas 3 – 8.

*dilatando el proceso y no quería cooperar, aun cuando se le hicieron las debidas advertencias.[35] Alegó que en el video se muestra que la esposa del apelante iba a entregar la registración, pero éste se negó con la mano.[36]*

*En el contrainterrogatorio, el Tte. Méndez afirmó que no llegó al lugar de la intervención y no estuvo presente cuando ocurrieron los eventos.[37] Declaró que, como parte de la investigación, generó sus notas y un documento de Uso de Fuerza.[38] Sin embargo, no hizo constar que se entrevistó a la cuñada del Sr. Capella Casellas, la **Sra. Marisol Negrón González** (Marisol Negrón).[39] Tampoco hizo constar que se revisó el video que tomó esta.[40] Así mismo, el Tte. Méndez admitió que pudo observar la intervención a través de videos y que en estos no se observa que el Sr. Capella Casellas estuviera agrediendo a los agentes ni que intentara huir.[41]*

*Durante el redirecto, el Tte. Méndez declaró que en el video no se veía al apelante dando patadas, pero sí se ve tirándose para atrás, evitando así el arresto.[42]*

Surge también de la TPO que, los testimonios presentados por la defensa, en síntesis, fueron:

- La **Sra. Marisol Negrón** – Cuñada del Sr. Capella Casellas.

  *En lo pertinente, testificó que, el apelante junto con ella, su nieto y su hermana, transitaban por la Carr. 2, cuando el apelante se percató que un vehículo conducía pegado al suyo, por lo que se cambió de carril. La testigo describió el vehículo; era oscuro, no tenía biombos, sirenas ni rotulación. Señaló que el vehículo también se cambió de carril y, aunque no escucharon una sirena, el Sr. Capella Casellas se detuvo.[43]*

  *Además, indicó que, una vez se detuvieron, se acercó una persona con gorra y mascarilla, a quien el apelante le preguntó por qué lo detenía. La persona le pidió la licencia y el Sr. Capella Casellas se la mostró pegándola al cristal y le manifestó que no se sentía seguro.[44] El agente le advirtió que tenía hasta que su supervisor viniera para entregarle la licencia y se movió para la parte posterior del vehículo, pero el apelante le solicitó que regresara.[45]*

  *Según el testimonio de la Sra. Marisol Negrón, pasados dos (2) minutos desde que el supervisor llegara al lugar con una actitud agresiva indicando que el Sr. Capella Casellas estaba obstruyendo la justicia, el Sgto. Acevedo le dijo al apelante que lo iba a arrestar, mientras este último le pedía que lo dejara hablar. Además, señaló que los policías abrieron la puerta del vehículo, y el Agte. Muñoz le pegó el DCE al apelante.[46] Añadió que su cuñado no pateó ni agredió a los policías, sino que les solicitó que le soltaran la mano para que se bajara del vehículo.[47]*

---

[35] TPO, pág. 90, líneas 19 – 22; pág. 91, líneas 14 – 23 y pág. 92 líneas 12 – 18.
[36] TPO, pág. 91, líneas 2 – 3.
[37] TPO, pág. 97, líneas 23 – 25.
[38] TPO, pág. 93, líneas 13 – 20.
[39] TPO, pág. 105, líneas 15 – 17; pág. 106, líneas 3 – 10.
[40] TPO, pág. 107, líneas 22 – 25 y pág. 108, línea 1.
[41] TPO, pág. 112, líneas 11 – 13, 18 – 19 y pág. 113, líneas 5 – 6.
[42] TPO, pág. 130, líneas 9 – 16.
[43] TPO, pág. 140, líneas 1 – 5, 22 – 25 y pág. 141, líneas 1 – 7, 13 – 15, 20 – 21.
[44] TPO, pág. 141, líneas 23 – 25 y pág. 142, líneas 1, 6 – 8, 20 – 25.
[45] TPO, pág. 143, líneas 17 – 20, 23 – 25 y pág. 144, línea 1.
[46] TPO, pág. 144, líneas 21 – 23; pág. 145, líneas 2-4, 16 – 23 y pág. 146, líneas 1 – 14.
[47] TPO, pág. 148, líneas 15 – 22 y pág. 149, líneas 12 – 14.

*En el contrainterrogatorio, la Sra. Marisol Negrón admitió que la persona que se bajó del vehículo estaba uniformada.[48]*

*Además, sostuvo que comenzó a grabar tan pronto el agente se fue.[49] También, admitió que en el video no se ve cuando el apelante le mostró la licencia a la Policía ni que el Sr. Capella Casellas entregó el documento que su hermana estaba tratando de dar.[50]*

*Así mismo, declaró que, al momento en que el apelante dijo que no se sentía seguro, ya el agente le había dicho la razón por la cual lo había detenido y solicitado los documentos.[51] Testificó, además, que, después de solicitarle los documentos como en tres ocasiones y ante la negativa del Sr. Capella Casellas, el agente decidió llamar al supervisor.[52]*

*A su vez, la Sra. Marisol Negrón declaró que, lo primero que hace el sargento cuando llega es presentarse y solicitarle los documentos al apelante en varias ocasiones advirtiéndole que, de no entregarlos, sería arrestado.[53] Posteriormente, los agentes abrieron la puerta del vehículo y trataron de arrestar al Sr. Capella Casellas.[54] La Sra. Marisol Negrón admitió que el apelante no se bajó voluntariamente, si no que tuvieron que intervenir dos agentes o más para sacarlo del vehículo.[55]*

- La **Sra. Negrón González** (en adelante, "Negrón González") **–** Esposa del Sr. Capella Casellas.[56]

   *Testificó sobre los hechos, ya que estuvo presente en la intervención y fue testigo ocular.[57] Declaró que, cuando el apelante se movió hacia el carril de la derecha, el carro oscuro y sin rotulación se movió detrás de él, prendió unas bombillas y, posteriormente, el Sr. Capella Casellas se dirigió hacia el paseo.[58]*

   *Según su testimonio, una persona con uniforme y mascarilla se acercó al vehículo y el apelante le preguntó por qué lo detenían. El Agte. Muñoz le indicó que venía a exceso de velocidad y le pidió que mostrara su licencia de conducir y el registro del vehículo. El Sr. Capella Casellas pegó su licencia de conducir al cristal y el Agte. Muñoz se movió hacia la parte de atrás del vehículo, indicándole que tenía hasta que llegara su supervisor para entregársela.[59]*

   *De acuerdo con la Sra. Negrón González, el Sgto. Acevedo llegó al lugar en una actitud intimidante y sin permitir hablar al apelante. Luego de que ella y su hermana le solicitaran al sargento que bajara el tono y le indicaran a este que el apelante ya había mostrado la licencia, el Sgto. Acevedo abrió la puerta del Sr. Capella Casellas y el Agte. Muñoz comenzó a aplicar el DCE en el brazo del apelante, mientras este último le indicaba que se detuviera porque padecía del corazón. La Sra. Negrón González testificó que cuando se salió del vehículo, el agente dio la vuelta para el lado que ella salió.[60] Testificó, además, que el apelante no impidió la labor de los policías en ningún momento.[61]*

---

[48] TPO, pág. 164, líneas 9 – 25.
[49] TPO, pág. 165, líneas 15 – 17.
[50] TPO, pág. 165, líneas 24 – 25; pág. 166, líneas 1 – 9; pág. 167, líneas 24 – 25 y pág. 168, líneas 1 – 3.
[51] TPO, pág. 170, líneas 9 – 14.
[52] TPO, pág. 171, líneas 9 – 12, 16 – 18.
[53] TPO, pág. 171, líneas 22 – 25 y pág. 172, líneas 10 – 20.
[54] TPO, pág. 174, líneas 11 – 14.
[55] TPO, pág. 175, líneas 23 – 25 y pág. 176, líneas 1 – 4.
[56] TPO, pág., 178, líneas 21 – 24.
[57] TPO, pág. 179, líneas 4 – 9.
[58] TPO, pág. 179, líneas 10 – 11, 15 – 16 y pág. 180, líneas 6 – 9.
[59] TPO, pág. 180, líneas 11 – 17 y pág. 181, líneas 2 – 4, 13 – 16, 20 – 22.
[60] TPO, pág. 182, líneas 13 – 14; pág. 183, líneas 1 – 2, 10 – 11, 15 – 25 y pág. 184, líneas 1, 4 – 5, 18 – 19.
[61] TPO, pág. 186, líneas 20 – 23.

> *Durante el contrainterrogatorio, la Sra. Negrón González declaró que el vehículo que se paró detrás de ellos prendió unas luces y, entonces, el Sr. Capella Casellas se movió al paseo. Admitió, que la persona que se bajó del vehículo estaba uniformada como policía y se acercó por el cristal del acusado,[62] y le indicó que lo detuvo por exceso de velocidad, por lo cual, le solicitó la licencia de conducir y del vehículo, pero el apelante no entregó los documentos.[63]*
>
> *A preguntas del Ministerio Público, la Sra. Negrón González declaró que grabó la intervención y se podía escuchar cuando esta le dice al apelante que entregue la licencia, pero el Sr. Capella Casellas no lo hizo.[64]*

Concluido el desfile de prueba, el **7 de marzo de 2023**, el TPI hizo las siguientes determinaciones de hechos:

1. *El Agte. Xavier Muñoz Figueroa, placa núm. 35652, adscrito a la División de Patrullas y Carreteras de Aguadilla, testificó que, el 4 de julio de 2022, a eso de las 6:10pm, se encontraba en una patrulla asignada en la Carr. 2, km 119.5, cuando se percató que un vehículo marca Toyota modelo Highlander color bronce conducía a 58mph en zona rotulada de 45mph.*

2. *El Agte. Muñoz declaró que encendió los biombos y sirenas de la patrulla y dirigió el vehículo hasta el área del paseo, donde este se detuvo. Posteriormente, estando uniformado con sombrero, chaleco y apellido visible, el agente se dirigió al área del conductor, donde se encontraba el acusado, le indicó las razones de su intervención y le solicitó su licencia de conducir y registro del vehículo; a lo que el acusado le respondió que él entendía que no estaba conduciendo a esa velocidad.*

3. *Según el testimonio del Agte. Muñoz, éste le indicó al acusado que la velocidad estaba registrada, que podía verificarla y que, de tener algún reclamo, estaba disponible el recurso de revisión. El agente solicitó nuevamente al acusado que entregara los documentos; sin embargo, el acusado no lo hizo. En vista de ello, el Agte. Muñoz orientó al acusado que estaba obstruyendo su labor al negarse a su solicitud.*

4. *El Agte. Muñoz testificó que, ante la actitud del acusado, se comunicó con su supervisor, el Sgto. Losangel Acevedo, mediante radio portátil, quien llegó al lugar, se identificó y solicitó al acusado que proveyera los documentos requeridos para emitir el boleto; sin embargo, el acusado continuó negándose.*

5. *De acuerdo con lo testificado, luego de solicitar los documentos en repetidas ocasiones, se le indicó al acusado que sería puesto bajo arresto; sin embargo, cuando los oficiales se le acercaron, comenzó a patearlos y a resistirse. Ante la resistencia, el Agte. Muñoz hizo uso del dispositivo de control electrónico (DCE). Comenzó un forcejeo entre los oficiales y el acusado, por lo que el agente dio la vuelta al vehículo, se montó por el área de pasajero y, desde ahí, empujó al acusado para sacarlo del vehículo*

---

[62] TPO, pág. 191, líneas 11 – 25 y pág. 193, líneas 7 – 9.
[63] TPO, pág. 194, líneas 22 – 25 y pág. 195, líneas 1 – 17.
[64] TPO, pág. 195, líneas 18 – 20 y pág. 200, líneas 12 – 20.

y ponerlo bajo arresto.

6. El Agte. Muñoz declaró que el acusado no cooperó con el arresto y continuó tensándose hasta que ambos oficiales lo montaron en la patrulla y lo transportaron hasta la División de Tránsito de Aguadilla. De acuerdo con el testimonio del agente, posteriormente, el acusado se negó a ofrecer información alguna, por lo que logró emitir el boleto y obtener la documentación necesaria 25 minutos después de la intervención, cuando la esposa del acusado se la entregó.

7. Durante el turno de la defensa, el Agte. Muñoz declaró que no recordaba si la patrulla estaba rotulada, que esta tenía biombos en su interior y que cualquier persona podría identificarla como un vehículo de la policía.

8. A preguntas de la defensa el Agte. Muñoz admitió, además, que el acusado le mostró el registro del vehículo a través del cristal; sin embargo, no le mostró la licencia de conducir. El agente admitió, además, que el acusado le indicó que no se sentía seguro y que no le preguntó las razones por las cuales no se sentía seguro o no le entregaba la licencia. Así mismo, el Agte. Muñoz admitió que estuvo dialogando con el acusado por menos de 10 minutos.

9. A preguntas del tribunal el Agte. Muñoz declaró que, cuando se bajó de la patrulla no llevaba en su mano arma de reglamento, el DCE o el batón retractable.

10. El Sgto. Acevedo, adscrito a la División de Patrullas y Carreteras de Aguadilla, testificó que, el día de los hechos, mediante radio, el Agte. Muñoz solicitó su presencia en la intervención con el acusado. El Sargento llegó hasta el lugar en una patrulla rotulada, se acercó al vehículo, se identificó y le advirtió al acusado que negarse a entregar los documentos constituía delito. Testificó, además, que la esposa del acusado, quien tenía el registro del vehículo en su mano, intentaba persuadir al acusado de entregar los documentos y este se negaba.

11. Según el testimonio del Sgto. Acevedo, este le solicitó al acusado que entregara los documentos en más de tres ocasiones, sin obtener resultados; por lo que le indicó que lo pondría bajo arresto y el acusado comenzó a lanzarles patadas a los oficiales, a quienes se les dificultó llevar a cabo el arresto, pues el acusado no cooperaba; razón por la cual el Agte. Muñoz hizo uso del DCE.

12. El Sto. Acevedo declaró que lograron sacar al acusado del vehículo cuando el Agte. Muñoz dio la vuelta al vehículo y sacó al acusado la puerta al pasajero. [sic.]. Declaró, además, que el Agte. Muñoz esposó al acusado y que el acusado se mantuvo rígido y poco cooperador.

13. A preguntas de la defensa el Sgto. Acevedo afirmó que el Agte. Muñoz no le informó que el acusado le había mostrado el registro del vehículo. Así mismo, el Sgto. Acevedo afirmó que le solicitó al acusado que entregara los documento, [sic] que el acusado se negó a entregarlos y que desconocía las razones por las cuales se negó.

14. El Sgto. Acevedo admitió durante el contrainterrogatorio que, mientras intentaba efectuar el arresto, el acusado le indicó que le soltara la mano y él salía del vehículo. Durante el recontrainterrogatorio el sargento admitió,

además, que la intervención duró unos 10 minutos.

15. El Tte. Héctor Méndez Rivera, Director del Distrito de Arecibo, declaró que, se le asignó la investigación del incidente, por lo que dirigió a la División de Tránsito de Aguadilla, en donde entrevistó al Agte. Muñoz, al Sgto. Acevedo, al perjudicado (aquí acusado), a la esposa de éste y a su cuñada.

16. Según las declaraciones del Tte. Méndez, el propósito de su investigación era corroborar el uso proporcional de la fuerza ejercida por los oficiales. Declaró que concluyó que así lo fue, toda vez que el acusado no proveyó la documentación requerida, estaba dilatando el proceso y se negó a cooperar, aun cuando se le advirtió que esto constituía obstrucción a la justicia. De acuerdo con las declaraciones del Tte. Méndez, en el video puede observarse que la esposa del acusado va a entregar los documentos, pero éste se niega.

17. A preguntas de la defensa, el Tte. Méndez afirmó que no llegó al lugar de la intervención y no estuvo presente al momento de los hechos. El Teniente afirmó, además, que, como parte de la investigación, generó 2 documentos sobre el incidente en los cuales no se hizo constar que se entrevistó a la cuñada del acusado ni que se revisó el video que tomó esta. Así mismo, el Tte. Méndez admitió que pudo observar la intervención a través de videos y que en estos no se observa que el acusado agrediera a los oficiales o intentara huir.

18. Durante el redirecto, el Tte. Méndez declaró que en el video no se veía que el acusado estuviera lanzando patadas a los oficiales, pero sí inclinándose hacia atrás.

19. Por su parte, la defensa presentó el testimonio de la Sra. Marisol Negrón González, quien es cuñada del acusado y estuvo presente al momento de la intervención. La Sra. Marisol Negrón testificó que, el día de los hechos, su cuñada, su hermana, ella y su nieto transitaban por la Carr. 2 cuando el acusado se percató que un vehículo conducía pegado al suyo, por lo que se movió hacia el carril de la derecha. Según el testimonio de la Sra. Marisol Negrón, el vehículo, que no tenía biombos, sirenas o rotulación, también se movió al carril de la derecha, razón por la cual el acusado se detuvo.

20. La Sra. Marisol Negrón declaró que, una vez se detuvieron, se acercó una persona con gorra y mascarilla, a quien el acusado le preguntó por qué lo detenía. La persona le solicitó la licencia y el acusado se la mostró pegándosela al cristal y le indicó que no se sentía seguro. Declaró, además, que el agente le indicó que si no entregaba la licencia llamaría al sargento. El acusado le solicitó al agente que regresara; sin embargo, éste se movió a la parte posterior del vehículo sin que tuviera oportunidad de hablar.

21. De acuerdo con el testimonio de la Sra. Marisol Negrón, pasados 2 minutos desde la intervención, el sargento llegó al lugar en una actitud agresiva indicando que el acusado estaba obstruyendo la justicia y que lo pondría bajo arresto, mientras el acusado le pedía que lo dejara hablar. La Sra. Marisol Negrón testificó que el sargento abrió la puerta del vehículo y el agente hizo uso del DCE

*aplicándoselo al acusado. Testificó, además, que el acusado no pateó o agredió a los oficiales y que les solicitó que le soltaran la mano para que se bajara del vehículo.*

22. *Durante el turno del Ministerio Público, la Sra. Marisol Negrón afirmó que, aun cuando el vehículo que se les acercó no encendió biombos ni sirenas, el acusado decidió estacionarse y que la persona que se bajó del vehículo estaba uniformada.*

23. *A preguntas del Ministerio Público, la Sra. Marisol Negrón afirmó que comenzó a grabar desde el momento en que el agente se bajó del vehículo. La Sra. Marisol Negrón admitió durante el contrainterrogatorio que en el video no se podía observar el momento en que el acusado mostró la licencia; sin embargo, sí podía observarse que su hermana tenía la licencia en la mano e intentó entregársela al acusado.*

24. *Así mismo, la Sra. Marisol Negrón afirmó que, al momento en que el acusado indicó que no se sentía seguro, el agente solo le había solicitado que le entregara la licencia y el registro y le explicó el motivo de la detención. Afirmó, además, que, ante la negativa del acusado, el agente le solicitó los documentos en unas 3 ocasiones y llamó a su supervisor.*

25. *A su vez, la Sra. Marisol Negrón afirmó que, al llegar al lugar, el sargento se identificó, le solicitó los documentos al acusado en varias ocasiones y le advirtió que, si no los entregaba, sería arrestado y, posteriormente, abrió la puerta para proceder con el arresto. La Sra. Marisol, afirmó que los agentes abrieron la puerta del vehículo con el propósito de arrestarlo y que, para sacar al acusado del vehículo fue necesario que intervinieran 2 o más agentes.*

26. *La defensa presentó, además, el testimonio de la Sra. Carmen Negrón González, quien es esposa del acusado y estuvo presente en la intervención. La Sra. Carmen Negrón declaró que cuando el acusado se movió al carril de la derecha, el vehículo que se les acercó, el cual describió como oscuro y no rotulado, encendió unas luces y, posteriormente, el acusado se movió al área del paseo.*

27. *Según el testimonio de la Sra. Carmen Negrón, una persona con uniforme y mascarilla se acercó al vehículo y el acusado le preguntó por qué lo detenían. El agente le indicó que venía a exceso de velocidad y le pidió que mostrara su licencia de conducir y el registro del vehículo. Declaró, además, que el acusado le indicó al agente que no venía a exceso de velocidad y que el agente le solicitó los documentos nuevamente. El acusado pegó su licencia de conducir al cristal y el agente se movió hacia la parte de atrás del vehículo indicándole que esperara a que llegara su supervisor para entregársela.*

28. *De acuerdo con el testimonio de la Sra. Carmen Negrón, el sargento llegó al lugar en una actitud intimidante y sin permitir hablar al acusado. Luego de que ella y su hermana le solicitaran al sargento que bajara el tono y le indicaran a este que el acusado ya había mostrado los documentos, el sargento abrió la puerta del acusado y el agente comenzó a aplicar el DCE en el brazo del acusado, mientras el acusado le indicaba que se detuviera porque padecía del corazón. La Sra. Carmen Negrón testificó que se bajó del vehículo y que el agente entró a este por la*

*misma puerta que ella salió. Testificó, además, que el acusado no impidió la intervención de la policía en el ningún momento. [sic.].*

29. *Durante el turno del Ministerio Público, la Sra. Carmen Negrón afirmó que el vehículo que se les acercó encendió unas luces y, entonces, el acusado se movió a la derecha. Afirmó, además, que la persona que se bajó del vehículo estaba uniformada como policía y se acercó por el cristal del acusado indicando que lo detuvo por exceso de velocidad y solicitándole la licencia de conducir y del vehículo. Sin embargo, el acusado no entregó los documentos.*

30. *A preguntas del Ministerio Público, la Sra. Carmen Negrón afirmó que grabó la intervención y que en ninguno de los videos se podía observar al momento en que el acusado le mostró al agente la licencia de conducir a través del cristal; sin embargo, se podía escuchar cuando ésta le dice al acusado que entregue la licencia y el acusado se niega.*

31. *La Sra. Carmen Negrón admitió durante el contrainterrogatorio que, al momento en que el acusado le indicó al agente que no se sentía seguro, el agente solo le había requerido los documentos. Admitió, además, que el agente solicitó los documentos en más de una ocasión y que le indicó que tenía hasta que llegara el supervisor para entregar los documentos, quien, al llegar al lugar, se identificó y solicitó los documentos al acusado, indicándole que, si no los entregaba podría ser arrestado.*[65]

Basado en las determinaciones de hechos antes expuestas, el TPI declaró culpable al Sr. Capella Casellas en dos (2) cargos menos graves por infracción al Artículo 246 en las modalidades establecidas en los incisos (a) y (e) del Código Penal, *supra*.[66] Así, dictó sendas *Sentencias*, en las que condenó al apelante *"al pago de $250.00 de multa por cada cargo para un total de $500.00, más el pago de $100.00 de pena especial por cada cargo"*.[67]

Inconforme, el **23 de marzo de** 2023, el apelante presentó una *Moción en Solicitud de Reconsideración*,[68] en la cual, arguyó que no se configuraron los elementos dispuestos en el Art. 246(a) del Código Penal, *supra*; además, que el ejercer el derecho a la libre expresión no puede constituir obstrucción a la justicia. Razón por la cual, el dictamen del TPI fue contrario a derecho.

---

[65] Anejo 2 de la *Apelación*, págs. 6 – 11.
[66] Anejo 3 de la *Apelación*, págs. 5 – 16.
[67] Anejo 3 de la *Apelación*, pág. 16.
[68] Anejo 4 de la *Apelación*, págs. 17 – 19.

El **4 de abril de 2023**, el TPI declaró *No Ha Lugar* la solicitud de reconsideración.[69]

Insatisfecho, el **10 de mayo de 2023**, el Sr. Capella Casellas acudió ante este foro apelativo e imputó la comisión de los siguientes errores:

> **PRIMERO:** *Erró el Tribunal de Primera Instancia, Sala Superior de Aguadilla, al determinar que el acusado-apelante cometió el delito de resistencia u obstrucción a la autoridad pública, cuando, por miedo a su seguridad, optó por mostrar y no entregar los documentos solicitados por los agentes del orden público, en cumplimiento con el Art. 10.22 de la Ley de Vehículos y Tránsito, 9 LPRA § 5302.*

> **SEGUNDO:** *Erró el Tribunal de Primera Instancia, Sala Superior de Aguadilla, al determinar que la intervención de los oficiales del orden público que intervinieron con el apelante fue conforme a derecho, cuando lo cierto es que no se configuró delito alguno que justificara el arresto del apelante, y, además, estos emplearon fuerza excesiva en contra de la integridad física del apelante.*

> **TERCERO:** *Erró el Tribunal de Primera Instancia, Sala Superior de Aguadilla, al encontrar culpable al apelante de dos cargos de obstrucción a la justicia, a pesar de que la prueba desfilada por el Ministerio Público no estableció los elementos del delito, más allá de duda razonable.*

Luego de varios trámites para la presentación y estipulación de la Transcripción de la Prueba Oral, el **14 de septiembre de 2023**, el apelante presentó su *Alegato Supletorio*.

Por su parte, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico (en adelante, "Pueblo"), compareció el **18 de octubre de 2023** mediante *Alegato*.

Con la comparecencia de ambas partes, el caso quedó perfeccionado, por lo que procedemos a resolver.

-II-

-A-

Constituye un principio fundamental que la culpabilidad de todo acusado de delito debe ser probada más allá de duda razonable. Este principio es consustancial con el principio de la presunción de inocencia y del debido proceso de ley, lo cual se deriva de lo

---

[69] Anejo 5 de la *Apelación*, pág. 20.

consagrado en la Enmienda VI de la Constitución Federal de Estados Unidos,[70] y del Artículo II, Sección 11 de la Constitución de Puerto Rico.[71] Así, el peso de la prueba permanece sobre el Estado durante todas las etapas del proceso a nivel de instancia.[72] En otras palabras, en nuestro sistema de justicia criminal el Ministerio Público tiene la obligación de presentar suficiente evidencia sobre todos los elementos del delito y su conexión con el acusado a fin de establecer la culpabilidad de este más allá de duda razonable.[73]

No obstante, la determinación de suficiencia de la prueba, que evidencie la culpabilidad del acusado más allá de duda razonable, es una cuestión de conciencia, producto de todos los elementos de juicio del caso y no meramente una duda especulativa o imaginaria.[74] Con el fin de explicar este concepto, el Tribunal Supremo ha expresado que:

> *[D]uda razonable es aquella duda fundada que surge como producto del raciocinio de todos los elementos de juicio involucrados en el caso. Para que se justifique la absolución de un acusado, la duda razonable debe ser el resultado de la consideración serena justa e imparcial de la totalidad de la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. En resumidas cuentas, duda razonable no es otra cosa que la insatisfacción de la conciencia del juzgador con la prueba presentada.[75]*

**-B-**

En lo que respecta al recurso de apelación criminal, se ha expresado que la determinación que hizo el juzgador de los hechos de la culpabilidad del acusado más allá de duda razonable es revisable en apelación por tratarse de un asunto tanto de hecho como de derecho.[76] No obstante, dado que le corresponde al jurado o, en su defecto, al juez dirimir los conflictos de prueba, no es aconsejable intervenir en tales determinaciones, *en ausencia de*

---

[70] Emda. VI, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 163.
[71] Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 267.
[72] *Pueblo v. Rodríguez Pagán,* 182 DPR 239, 258 (2011).
[73] *Pueblo v. García Colón* I, 182 DPR 129, 174 (2011).
[74] *Pueblo v. Irizarry,* 156 DPR 780 (2002).
[75] *Id.,* pág. 788. *(citas omitidas).*
[76] *Pueblo v. Rodríguez Pagan*, 182 DPR 239, 259 (2011).

*pasión, prejuicio, parcialidad o error manifiesto.*[77] Por lo tanto, la determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia, ya sea en un juicio por jurado o por tribunal de derecho, es merecedora de una ***gran deferencia por parte del tribunal apelativo.***[78]

Es decir, la presunción de corrección que acompañan las actuaciones de los tribunales de instancia, *le compete al apelante la obligación de demostrar lo contrario.*[79] Para ello, es necesario señalar el error y fundamentarlo en cuanto a los hechos y la fuente del derecho que la sustentan; de esa forma, podrá el foro apelativo estar en posición de atender los reclamos que allí se plantean. *De ahí, la importancia de la reproducción de la prueba oral, ya que sin ella, los foros apelativos están impedidos de descartar la apreciación de la prueba que realizó el tribunal de instancia.*[80]

### -C-

En lo concerniente a este caso, el Artículo 246 establece dos modalidades distintas en los incisos (a) y (e) del Código Penal de Puerto Rico de 2012,[81] que establece como delitos menos graves la ***resistencia u obstrucción al ejercicio de la autoridad pública*** a propósito o con conocimiento en cualquiera de las siguientes circunstancias:

> *(a) Impedir a cualquier funcionario o empleado público en el cumplimiento o al tratar de cumplir alguna de las obligaciones de su cargo.*
> *(…)*
> *(e) Resistir al arresto o huir violentamente luego de ser informado por un funcionario del orden público o persona particular en los casos permitidos por ley, de su autoridad legal para practicarlo.*[82]

Para que se configure el delito, el funcionario o empleado público tiene que estar ejerciendo un acto lícito y propio de su cargo,

---

[77] *Id.* Énfasis nuestro.
[78] *Id.* Énfasis nuestro.
[79] *Pueblo v. Prieto Maysonet,* 103 DPR 102, 107 (1974). Énfasis nuestro.
[80] *Pueblo v. Calderón Hernández,* 145 DPR 603, 605-606 (1998).
[81] 33 LPRA sec. 5336(a),(e).
[82] **Artículo 246(a),(e). — Resistencia u obstrucción a la autoridad pública.** 33 LPRA sec. 5336.

siendo suficiente que la persona desobedezca una orden lícita de un funcionario o se oponga a ella para que se considere una resistencia.[83]

Por último, el Artículo 10.22 de la Ley Núm. 22-2000, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, establece la obligación del conducto de detenerse e identificarse ante el requerimiento de la autoridad de agentes del orden público, en lo pertinente, dispone que:

> *Todo conductor deberá detenerse inmediatamente cuando un agente del orden público, entendiéndose Policía, Policía Municipal, Policía Portuaria, dentro de las facilidades portuarias, Inspectores de la Comisión de Servicio Público en el caso de vehículos o servicios bajo su jurisdicción, o el Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, se lo requiriere. Después que se le informe el motivo de la detención y las violaciones de la ley que aparentemente haya cometido, el conductor vendrá obligado igualmente a identificarse con dicho agente si así éste se lo solicitare, y también deberá mostrarle todos los documentos que de acuerdo con esta Ley y sus reglamentos debe llevar consigo o en el vehículo.*
> *(...)*
> *Ninguna persona podrá voluntariamente desobedecer o negarse a cumplir una indicación u orden legal que se imparta en la forma dispuesta en este Artículo por un agente del orden público con autoridad legal para dirigir, controlar o regular el tránsito.* [84]

**-III-**

A la luz de la normativa antes expuesta, procedemos a evaluar los errores señalados en el recurso ante nuestra consideración.

En resumen, el Sr. Capella Casellas aduce que erró el TPI al encontrarlo culpable por los delitos de obstrucción a la autoridad pública y resistencia al arresto, cuando por miedo a su seguridad, optó por mostrar y no entregar los documentos solicitados por los agentes del orden público, por lo que no se justifica su arresto ni el exceso de fuerza en su contra. En consecuencia, arguye que el Ministerio Público no estableció los elementos del delito. Por estar íntimamente relacionados, los discutiremos conjuntamente. Veamos.

---

[83] *Pueblo v. Ortiz Díaz*, 123 DPR 865, 873 (1989).
[84] 9 LPRA sec. 5302.

De umbral —y cónsono con el derecho esbozado— el Artículo 246 inciso (a) del Código Penal de Puerto Rico de 2012, establece que comete el delito de *resistencia u obstrucción al ejercicio de la autoridad pública* todo aquel que **(1)** a propósito o con conocimiento **(2)** impida a cualquier funcionario o empleado público en el cumplimiento o al tratar de cumplir alguna de las obligaciones de su cargo.[85] También, el Artículo 246 inciso (b) del Código Penal de Puerto Rico de 2012, dispone que se comete el delito de *resistencia u obstrucción al ejercicio de la autoridad pública* por todo aquel que **(1)** a propósito o con conocimiento **(2)** se resista al arresto ... luego de ser informado por un funcionario del orden público ... de su autoridad legal para practicarlo.[86]

**En primer orden**, el apelante argumenta que no entregó los documentos requeridos porque tenía miedo. **No tiene razón**. Surge de la prueba que el Agte. Muñoz conducía una patrulla con biombos interiores encendidos, debidamente uniformado e identificado como policía de P.R., al momento de detener al Sr. Capella Casellas por conducir a exceso de velocidad. El Agte. Muñoz le notificó el motivo de la detención, le solicitó la licencia de conducir y la registración del vehículo para emitirle el boleto de tránsito. Le advirtió en múltiples ocasiones que, de no proveer los documentos, sería arrestado. Todavía más, ante la negativa del Sr. Capella Casellas, el Agte. Muñoz solicitó la intervención del Sgto. Acevedo, quien, luego de un tiempo, se presentó al lugar de la intervención en una patrulla rotulada, debidamente uniformado. Al igual que el Agte. Muñoz, le pidió la licencia de conducir y la registración del automóvil en varias ocasiones, sin resultado positivo. Nótese, que la prueba antes dicha, no justifica el temor alegado por el apelante ni su negativa de entregar los documentos solicitados por los policías.

---

[85] 33 LPRA sec. 5336(a).
[86] 33 LPRA sec. 5336(e).

**En segundo orden**, el apelante argumenta que cumplió con los requerimientos de los policías al **mostrar**, a través del cristal de la ventana del vehículo, los documentos que le fueron solicitados. **Tampoco tiene razón**. En lo pertinente, el Artículo 10.22 de la citada *Ley de Vehículos y Tránsito de Puerto Rico*, consigna que el conductor tiene el **deber** de detenerse inmediatamente ante el requerimiento de un policía y, luego de informarle el motivo de la detención y la violación de ley, el conductor viene **obligado a identificarse** con dicho policía cuando así le fuere solicitado; y además, **deberá mostrarle todos los documentos** que debe llevar consigo o en el vehículo, en este caso, la licencia de conducir y la registración del automóvil. Lo antes establecido debe contextualizarse con el párrafo final del referido Artículo 10.22, al disponer que **ninguna persona podrá voluntariamente desobedecer o negarse a cumplir una indicación u orden legal que se imparta por un agente del orden público con autoridad legal para controlar el tránsito**. [87] Nótese, que el citado Artículo obliga al conductor obedecer las indicaciones u órdenes legales impartidas por la policía con el propósito de que se cumpla la *Ley de Vehículos y Tránsito de Puerto Rico.* A todas luces las órdenes dadas al apelante eran totalmente legales, razón por la cual, incumplió con su deber de **entregarle** al Agte. Muñoz la licencia de conducir y la registración del vehículo. Ello a su vez, constituyó una obstrucción al ejercicio de la autoridad pública en violación al Artículo 246 inciso (a) del Código Penal de Puerto Rico de 2012.

**En tercer orden**, el apelante arguye que su arresto no estaba justificado, por lo cual constituyó un uso de fuerza excesiva. **No tiene razón**. Luego de múltiples solicitudes infructuosas para que el Sr. Capella Casellas entregara la licencia de conducir y la

---

[87] 9 LPRA sec. 5302.

registración del vehículo, se le anunció que estaba bajo arresto y se le solicitó que se bajara del automóvil. Ello no ocurrió, pues surge del testimonio de la Sra. Marisol Negrón —testigo de la defensa— que el apelante no se bajó voluntariamente, lo que requirió la intervención de dos agentes o más para sacarlo del vehículo.[88] Dentro del automóvil, resistió el arresto dando patadas,[89] por lo que se le aplicó el dispositivo de control electrónico (DCE) para sacarlo del vehículo y ponerlo bajo arresto.[90] Fuera del auto continuó tensándose hasta que ambos oficiales lo montaron en la patrulla y lo transportaron hasta la División de Tránsito de Aguadilla.[91] Allí, se negó a ofrecer datos sobre su persona, pero su esposa entregó a la policía la licencia de conducir, y luego de más de veinte (20) minutos, se pudo emitir el boleto por violación de tránsito.[92] Sin justificación alguna el apelante resistió el arresto, en violación al Artículo 246 inciso (e) del Código Penal de Puerto Rico de 2012.

En fin, ante la prueba presentada por el Pueblo, el TPI concluyó —más allá de duda razonable— que el Sr. Capella Casellas violentó los incisos (a) y (e) del Artículo 246 del Código Penal de Puerto Rico de 2012 al resistir u obstruir el ejercicio de la autoridad pública del Agte. Muñoz, cuando voluntariamente y sin justificación legal alguna se negó a entregar la licencia de conducir y la registración del automóvil; y luego, resistir el arresto.

Tal determinación resulta razonable, por lo que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, procedemos a confirmar las sentencias apeladas.

**-IV-**

Por los fundamentos antes expuestos, resolvemos **confirmar** las dos (2) Sentencias apeladas.

---

[88] TPO, pág. 175, líneas 23 – 25 y pág. 176, líneas 1 – 4.
[89] TPO, pág. 17, líneas 15 – 25 y pág. 18, líneas 1 – 5.
[90] TPO, pág. 18, líneas 10 – 18 y pág. 19, líneas 9 – 15.
[91] TPO, pág. 19, líneas 23 – 25 y pág. 20, líneas 3 – 16.
[92] TPO, pág. 20, líneas 24 – 25 y pág. 21, líneas 1 – 17.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones